UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-504-RJC

| | |
|---|---|
| WESLEY WOODLING,           ) | |
| )                          | |
| Plaintiff,       ) | |
| )                          | |
| vs.                         ) | **ORDER** |
| )                          | |
| M.A. MANGUM, et al.,         ) | |
| )                          | |
| Defendants.     ) | |
| _____ ) | |

THIS MATTER is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim, (Doc. No. 8), and on Plaintiff's Motion to Amend/Correct the Complaint, (Doc. No. 12).

I.   BACKGROUND AND ALLEGED FACTS

The following facts from Plaintiff's Complaint are taken as true for the purpose of Defendants' Motion to Dismiss and are construed in the light most favorable to Plaintiff. On August 17, 2009, Defendants, who at all relevant times were police officers and detectives of the Charlotte-Mecklenburg Police Department ("CMPD"), were investigating a homicide that took place the day before in Charlotte. See (Doc. No. 1 at 7). Plaintiff was subsequently convicted of murder as a result of the investigation, and he is currently incarcerated at Alexander Correctional Institution in Taylorsville, North Carolina.

In his Complaint, the Petitioner alleges the following: On August 17, Defendants Fitch, McFadden, Rainwater, and Mangum found Petitioner hiding under a bed at the residence of his girlfriend's father at 7025 Bluffwood Cove in Charlotte, North Carolina. (Id. at 7-9). Plaintiff

-1-

crawled out from under the bed.  (Id.).  After Defendants briefly questioned Petitioner in the living room and advised him that he was not under arrest, Plaintiff "was told [he] would have to go downtown [to the police station for questioning] with the officers."  (Id. at 9).  Plaintiff's girlfriend Brittany West accompanied him to the police station.  (Id.).

Plaintiff and West were transported in a police vehicle to the station at 3:01 p.m.  (Id. at 10).  Plaintiff contends that he was "arrested" or, rather, seized under the Fourth Amendment without probable cause from this point forward.  See (Id. at 14).  Upon arrival at the police station, Defendants Fitch, McFadden, Rainwater, and Mangum placed Plaintiff and West in separate interrogation rooms.  (Id. at 9-10).  A person not identified in the Complaint advised Plaintiff that he was free to leave.  (Id. at 10).  However, he "was restrained before taking five steps from the interrogation room [he] had been sitting in."  (Id.).  Defendant Rainwater allegedly stopped Plaintiff from leaving and brought him back into the interrogation room where Plaintiff had left Defendant Fitch, and Plaintiff was subsequently "shackled to the floor."  (Id.).

Plaintiff alleges that he gave Defendants Fitch and Rainwater consent to search his apartment at 4:58 p.m.  (Id. at 14).  He contends that this consent was void since he never consented to being detained.  At 6:08 p.m. he began to request counsel, but Defendants Rainwater and Fitch ignored his requests.  Plaintiff then reasons that "the searches would have likely ended before they could finish."  (Id.).

At 7:34 p.m., Defendant Mangum "ordered that [Plaintiff's] vehicle be seized as evidence."  (Id. at 15).  Defendant Ward carried out this order by having the vehicle towed to a facility under CMPD's control.  At some undefined point later, Defendant McFadden released custody of the vehicle to Plaintiff's father.  (Id.).  Plaintiff claims he had no knowledge of "either

-2-

event" (presumably, the vehicle seizure and its subsequent relinquishment of CMPD control), and that he never consented to the search and seizure of his vehicle.  (Id. at 16).

At 9:40 p.m. Defendants Ward, Mangum, and Rainwater arrived at a residence at 4412 Commonwealth Avenue, where Plaintiff had left a duffle bag with a person named Aaron Helms. (Id. at 20).  Plaintiff asserts that he did not abandon the bag.  See (Id. at 21).  Plaintiff alleges that Defendant Ward observed a silver revolver in the bag.  (Id. at 20).

At 10:06 p.m. Defendant Hopkins obtained West's written consent to search Plaintiff's apartment and that Defendant Hopkins, Defendant Ward, and Defendant McFadden searched the apartment pursuant to West's consent.  (Id. at 16; 18).  Earlier that day, when Defendant McFadden was questioning West at the police station, West told McFadden that she lived with Plaintiff at his apartment, but that she was not identified on the lease.  Despite storing several personal belongings, including clothes, at the apartment, West did not have a key to gain entry. (Id. at 17-18).  After obtaining written consent from West, Defendants Hopkins, Ward, and McFadden entered the apartment without a key because it was left unlocked "after the previous search."  (Id. at 18).  From this second search, Plaintiff alleges that Defendants Hopkins and McFadden "admitted" to seizing some of Plaintiff's clothes as evidence.  (Id. at 19).  Plaintiff then seems to suggest that the searching detectives stole from his apartment several expensive pieces of electronic equipment, video games and video game accessories, designer sunglasses, and barber clips.  (Id.).  Plaintiff makes this inference because family members reported these items missing to him after the search.  See (Id.).

In his prayer for relief, Plaintiff seeks: "compensatory damages for the value of the items seized and not returned to me and compensatory damages for mental anguish and emotional

distress, feelings of unjust treatment, humiliation, and personal indignity in the amount of fifty thousand dollars. I am not seeking a jury trial." (Id. at 23). Furthermore, in the motion to amend filed on January 9, 2013, Plaintiff states that he wants to amend Section E of the Complaint identifying his injuries to state:

> "Because of the reckless disregard for my constitutional rights displayed by these detectives through their behavior I now have a large, unwaivering amount of distrust for officers in general, and I feel that this will and has already begun to make life much harder for me. Many items of value were taken from me which include the following: a money order for $475.00, a cell phone and charger; two revolvers; 2 shirts; 2 shorts; two pairs of shoes and a pair of boxers; a bulletproof vest; a regular holster and a shoulder holster; 3 ammunitions magazines; various ammunitions; a hat; an Xbox 360; Xbox 360 controller and 5 games; a Samsung DVD player; a pair of Versaci sunglasses; a 1 to 5 disc duplicator; 2 guitar hero guitars and a Guitar Hero drumset for the Xbox 360. I will never feel safe or secure again. My arrest led to time spent in jail up until the probable cause hearing. I have suffered physically, emotionally, and spiritually in the form of mental anguish and emotional distress, feelings of unjust treatment, humiliation, and personal indignity."

(Doc. No. 12 at 2).

## II. STANDARD OF REVIEW

On a motion to dismiss, the Court must accept the factual allegations of the claim as true and construe them in the light most favorable to the non-moving party. Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010). To survive the motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff therefore must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [it] to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186,

-4-

193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. 662 at 678)

## III. DISCUSSION

In Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. <u>A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.</u> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 486-87 (footnotes omitted; emphasis added).

Plaintiff alleges throughout the Complaint that every search and seizure by Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments. Although he does not expressly ask the Court to free him, he alleges as part of his injuries that "[m]y arrest led to time spent in jail." (Doc. No. 1 at 22). Furthermore, given the nature of Plaintiff's factual allegations and injuries, a civil judgment in Plaintiff's favor would necessarily imply that the criminal judgment against Plaintiff resulting from the investigation was invalid. Plaintiff has not alleged in his Complaint that his underlying conviction or convictions have been reversed or otherwise invalidated. Therefore, the Complaint must be dismissed as barred by the principles in Heck v. Humphrey.

-5-

Throughout the Complaint Plaintiff proffers legal conclusions that, from the seizure of his person, to the search of his apartment and seizure of evidence there, Defendants violated his constitutional rights. If Plaintiff is successful in showing what he alleges in the Complaint—that there was no probable cause to seize his person—then the illegality of the initial seizure would require the suppression of all evidence that was gathered after that point. Furthermore, the crux of Plaintiff's Complaint is that he would not have be serving time in jail if he were not exposed to Defendants' alleged violations of his constitutional rights. In sum, Plaintiff's action is barred by Heck.[1]

## IV. CONCLUSION

For the reasons stated herein, this action is dismissed as barred by Heck.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion to Dismiss, (Doc. No. 8), is **GRANTED**. This action is **DISMISSED**, as Plaintiff's claims are barred under Heck. Although Defendants contend that the dismissal should be with prejudice, dismissal pursuant to Heck is properly without prejudice.

2. Plaintiff's Motion to Amend, (Doc. No. 12), is **GRANTED**, and the Court has considered the proposed amendments to the Complaint in adjudicating Defendants' motion to dismiss.

---

[1] Furthermore, as Defendants note, the only actual, compensable injury is Plaintiff's speculation that some or all of Defendants stole electronics, sunglasses, and other items belonging to him as a result of the apartment search. Plaintiff has pled nothing to show any nexus between the alleged unconstitutionality of the search in the pending murder investigation and the missing equipment. Thus, to the extent that Plaintiff attempts to allege some type of federal constitutional violation arising out of the alleged theft of his personal property by Defendants, Plaintiff fails to state a claim against Defendants.

-6-

Case 3:12-cv-00504-RJC   Document 14   Filed 01/23/13   Page 6 of 7

3.	The Clerk is instructed to terminate this case.

Signed: January 22, 2013

Robert J. Conrad, Jr.
Chief United States District Judge

-7-